Good morning, Your Honor. Thank you. Good morning, Your Honors. Tanya Whiteleather appearing for Appellant Complaint of A.G. Here, our primary question raised in this appeal is whether the standard set by the Superior Court in 2003, that is, that failure to include a representative from a student's current private school, in that case also include parents, when the student has an IEP, whether that results in lost educational opportunity for the student. I would have thought the question in this case is whether you can convince us to distinguish Napa Valley. Thank you. That's my next step, Your Honor. Napa Valley addressed a student who was not found eligible, relied on the OSEP Appendix A, looked to the language of the interpretations of OSEP that addressed students who had not yet been found eligible for special education. In fact, the language of the Napa Valley court indicated, and this has been repeated, but I can't clarify it enough or emphasize it enough, if the IEP team is improperly constituted, the reviewing court is ill-situated to know what the IEP would look like if the school district had included all of the required participants on the IEP team, nor can the court substitute its judgment for educational policy makers by determining what kind of IEP will best suit the disabled child's needs. A properly constituted IEP team is in the best position to develop an IEP that suits the particular needs of the student, and that was the Napa Valley court at 84-97. When the district court first issued its order in this case, the court found that given the complexity of AG's case, the court cannot say what AG's IEP would have looked like if these critical members had been included, and that was in the decision, first decision issued by the district court. Sotomayor, wasn't there evidence before the Special Education Hearing Office that the family had been asked whether they wanted a current provider present and declined? It was a little bit different from that, Your Honor. The family had actually believed this to be a simple addendum IEP for review of an assessment, and not an annual IEP. I'm looking at AR-643. Ms. Brady testified that the day before the scheduled IEP meeting, Tustin Center Director Jada Carter telephoned her and stated that the Tustin Center staff would not be attending the IEP meeting because the parents did not want them to attend. Correct. That was because the parents, and this was in a time before the shift of the burden of proof to the parent. The burden was on the district. The parents, and this was the evidence at hearing, had the understanding that this was not an IEP where we were going to have an annual, a triennial, that this was a review of an assessment that was to be done. And they did. Was that part of the record before the hearing office? It was. And they admitted. And we have no concern with that. No, no. What you just said was the parents' explanation for why they said a parent provider doesn't need to attend. Yes. And that was at hearing transcript volume 9, 2408.7-25. And I gather no one has really been relying on that as being what validated this. What validated this was the NAPA rule. And I'm not understanding very well your distinguishing of NAPA. In NAPA, there was one provision, as I understand it, which applies both to regular education teachers and special education teachers, and it says a teacher rather than the teacher. And NAPA, I mean, I think somewhat dubiously interprets that to mean it doesn't have to be a current teacher, but either as to either. And I don't see what distinction you're making about that. If I may. The NAPA court addressed only the eligibility of a child who had not yet been identified. Well, but not with regard to the regular education teacher. And it talked about the need to have current teachers, that that was not required for a student who was not currently eligible. The NAPA court did distinguish. Where does it say if a student is not currently eligible? The language of the NAPA court, let's see, and I don't have that quite at hand, Your Honors, but there's language in that. I will look for that as I'm speaking. Addressed, it's a different situation for a student who has already jumped through the hoops of special education. I don't see where that is. Okay. And I will come back to it if I may. The other difference is that the NAPA court looked at the Appendix A and looked at the questions, but did not look both at question 23 and 26. And 26, and we had outlined that in the opening brief and addressed that, that the requirements of the teacher can be made by having a special education teacher or the provider. And then under 26 addresses the need to have that special education teacher or special education provider be somebody who is currently providing services or will be. Doesn't NAPA Valley say at 496F939 that the statute does not require the participation of a student's current teacher or provider? It does say that. It's based upon, in large part, upon the NAPA Valley Court's interpretation of the OSEP regulations. The OSEP regulations look to the special education provider or teacher, require that it be the individual who is or will be providing services. And if you look at the very clear language of is or shall under the statutes that we briefed, there is no opportunity to have somebody who had had the student years before. These individuals identified by the district court as the persons who might be providing services were not determined by that IEP team to be the individuals who would be. Therefore, they did not meet that requirement under Appendix A, question 26. So is your argument that the NAPA Valley panel misconstrued the statute? My argument is that what the NAPA Valley panel stated was dicta. It did not address the issues of a child previously unidentified and not available. And I will find that section when I return. But the NAPA Valley was very, very strict and clear set of facts that do not apply here. We have a young man here who had a current special education teacher, had current special education providers who were, under that question 26, providing. The other individuals were not those who would be providing services under the clear and, I think, unequivocal. And why aren't these the people who would be providing services? Because will, the language is that they will be. Right. It's interpreted under Federal court decisions as shall. It's a positive. It is going to happen. Okay. So to simply say the two individuals who were in attendance might have been or were proposed is far different from shall. The only circumstance in which you have individuals who shall be providing services is when you have an IEP determination that those individuals will be. The IEP, the plan for a student, is set out by the IEP, including the parents. And if I may, I'd like to reserve my two minutes. Yes, you sure can. Thank you. Thanks for coming in today. Thank you. Counsel? Yes, please. Excuse me. Please, the Court. David Larson on behalf of the Responding Party, Placenta, Yorba, and the Unified School District. I'd like to just make a couple of points briefly in response. There's only one statutory definition of an IEP team, and that statutory definition is carried over into the Code of Federal Regulations, and that's the definition that the Court in the NAPA case was actually applying. This idea that there's a distinction between an eligibility IEP team and an implementing IEP team is without any legal authority. I'd also like to make it very clear that the NAPA holding, to me, makes very little sense, even with regard to language or policy. But what would be the point of providing that somebody who taught the kid five years ago? Now, this particular case is a special circumstance because you have a child who has such severe difficulties that I gather it doesn't make that much progress from one year to the next, and it might be okay. But suppose you had a child with a learning disability who five years ago couldn't read and now could read. What good is it going to do to have somebody who taught the kid five years ago? Well, I can't speak to the NAPA case, but I can speak to this case, Your Honor. Well, why can't you speak to the NAPA? I want to test the rule out because it really bothers me. It doesn't make sense to me, and I understand that that's in one sense not our job, but it would help me to understand it. Well, I don't know that I understand the NAPA rule, but let me just explain the facts of our case. The teachers that were at this IEP meeting, and by the way, the notice of the IEP made it very clear that this was not just to review a report, but that this was the actual annual evaluation, and that was on the notice. And the teachers that were there from the district had taught this student just two years prior, number one. Number two, they had been to the school, and they had interviewed the current teachers. And number three, the parties had mutually agreed to an independent clinical psychologist, Dr. Paul Doris, who was an expert in this field, to go out and spend a full day at the Tustin Center. So it's your argument that even if it was an error, it wasn't a material one? Exactly. The clinical psychologist had been there, had spent a day with all of his current teachers, and then he had spent a day at the district's proposed facility, and then he came and discussed that. Now, you add to that the fact that then all of the assessment team from the district also went to that school and spent substantial time, multiple times, interviewing the teachers and seeing the child in that setting. And then finally, you add to that the fact that at the hearing itself, the teacher who was absent, basically at the request of the parent, testified to the hearing officer. And the hearing officer, after hearing the teacher and the aide, and as Dr. Doris correctly noted, this is basically an aide-driven program. This is a student who is very severely involved, who doesn't make a lot of progress from year to year. And you add to the fact that the hearing officer, after having heard that teacher and that aide, still concluded, as did Dr. Doris, that in fact there's no prejudice in this case. So what is the standard? If we thought there was a procedural error here, what's the standard with regard to the impact on the FAPE? Well, according to the decisions of this circuit, you have to show that there would have been lost educational opportunity or non-parental participation. In this case, there was clearly parental participation. If you look at the IEP itself, you'll see that they specifically, parents did participate. And in fact, the parents stated in the IEP that the reason that they had disinvited the private school provider was the fact that they were involved in legal proceedings. And in fact, this matter was pending before the Office of Administrative Hearings at that time. But the issue then becomes one of whether or not there was lost educational opportunity. And I would submit that in this case, it's very clear from both the hearing officer's decision, who it had the opportunity of listening to. And the NAPA case actually talks about the fact that you could have a, even if you had an IEP team that was not properly constituted, you could have basically that cured by the fact that the missing parties come in, testify, provide what information they have. And then if you look at the hearing officer's decision, the hearing officer very clearly comes back and says, you know, taking all that into account, the IEP team in this case was fully aware and was well aware of the fact that the, what was going on at Tustin Center, which was very unlike Shapiro, for example. Even if Shapiro were to be the law of the circuit, there's so many distinguishing factors between Shapiro and his case. Plus, you add to that the fact that Dr. Van Zak, the parents' expert, came in, and he also went to both programs, and he said, well, both programs are excellent programs. They both provide basically the same program. I would give a slight nod, and those were his, no, slight advantage. That was Dr. Van Zak's testimony. I would give a slight advantage to the Tustin Center, which is not the standard under special education. The bottom line was this is a district that had worked very diligently to work with his family, to work with understanding the program that this young man needed and providing that program. The IEP team, having been evaluated, well, both programs having been evaluated by an independent expert, which was mutually selected by the parties, who concluded that there was no reason why the same program could not be provided at the public education location. And we understand your arguments. I think we've got your arguments well on hand. Let's hear from the other side. Thank you for coming in today. And to answer an earlier question, Your Honors, the addressing of the, by Napa Valley, a distinction I think came at, in their citation at 941, where they talked about the fact that once a child qualifies for special education, and the quotation that I read earlier. And that was in a different context. It was in the context of the harmocera discussion. I think they talk about jumping through the hoops of special ed. For harmocera purposes. So what about the harmocera question, if that's where we're going? The which? I'm sorry? The harmocera question. The harmocera question we just heard at Great Lens, which is fairly persuasive, I must say, about why in this instance, since these teachers not only taught him two years ago, but also spent a good deal of time reviewing him recently. And since there was an expert agreed upon by the parties who spent a lot of time devising an appropriate program for this child, why in this context does the absence of the current, and the current teacher, when she testified, essentially support the conclusion? Why is there a problem? The current teacher did not support the conclusion that he should go to the district's placement. That's when she testified. Okay. That's when she testified. The problem is, and I know I'm very, very close to the end of my time, the problem is that the whole concept of the IEP team is to make decisions there, to have the individuals who know the child best, who listen to you. But we don't have a per se rule, right? We don't have a per se rule? A per se rule, i.e., it isn't true that simply because a certain person isn't there who should be there, that's it? There are actually, the Shapiro case holds that with the interpretation I think of NAPA. But NAPA doesn't. NAPA says something the contrary, but it was not, again, what was provided by the NAPA court, we believe, was dicta, because it was not on point with the case presented before it. I just want to say, very, I know I'm close to the end, the IEP team is very important. The individuals who came did not have information about the student. They did not know about his brain injuries. They did not know about his sensory processing issues. One of them had never worked with him, the nurse. The adaptive PE teacher had worked two months with him, two years prior. There was so much that she testified to, a hearing in the briefs, that she did not know about this child. That is one of the reasons that the Shapiro court held as it did. And the IEP team makes the decision. Otherwise, we would do IEPs by report, Your Honor. Thank you very much. Thank you for your argument. Thank you for coming in today. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar, which is the United States v. Van Alstyne.
judges: Hawkins, Berzon, Clifton